**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JEANETTE GARRETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL NO. 08-0175-WS-M** |
| | ) |
| **CEONIA STANTON,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (doc. 13).  On July 28, 2008, after briefing by the parties, the Magistrate Judge entered a Report and Recommendation (doc. 26) recommending that the Motion to Dismiss be granted and that this action be dismissed in its entirety.  Plaintiff has filed a Statement of Objection (doc. 29) and Brief in Support of Objection (doc. 30), wherein she asks the Court to reject the Report and Recommendation and to deny the Motion to Dismiss.  Defendants have filed a Response (doc. 32) urging the opposite result.  The Motion to Dismiss is now ripe for disposition.

**I.      Background.**

      **A.      *The Complaint.***

In her Complaint filed on April 2, 2008, plaintiff, Jeanette Garrett, alleges federal and state-law causes of action against defendants Ceonia Stanton, Jr., Jeff Dunn and Pat Donnelley,[1] arising from her arrest and criminal prosecution for certain controlled substance offenses.  Garrett seeks to hold these defendants (all of whom are law enforcement officers) liable for monetary damages and other relief on the grounds that her arrest and prosecution were the result of mistaken identity.

---

[1] There is a discrepancy in the parties' filings as to the proper spelling of defendant Donnelley's last name, with plaintiff usually (but not always) spelling it "-ey" and defendants spelling it "-y."  For purposes of this Order, the Court adopts the spelling utilized the majority of the time in the Complaint.

As alleged in the Complaint (and accepted as true for purposes of this Rule 12(b) Motion), the underlying facts are as follows: On October 14, 2003, defendants Dunn and Donnelley participated in "an undercover drug law enforcement operation conducted by the Baldwin County Sheriff's Department," wherein Dunn and Donnelley purchased controlled substances from a black female in Daphne, Alabama. (Complaint, ¶ 8.) Two days later, defendant Stanton prepared a narrative stating that Dunn and Donnelley, "acting as undercover officers," had purchased crack cocaine from a black female whose identity was unknown. (*Id.*, ¶ 9.) On October 23, 2003, Stanton prepared another narrative stating that the black female had been identified as plaintiff, Jeanette Garrett, and further asserted that (a) Dunn had spoken with Garrett during the transaction, and (b) "Dunn and Donnelley saw Garrett go to a trailer, tap on it's [*sic*] side, enter and return with the drugs." (*Id.*, ¶ 10.)[2] An arrest warrant was issued for Garrett in March 2004 based on these narratives, and she was indicted the following month for, *inter alia*, felony distribution of cocaine and marijuana. (*Id.*, ¶ 11.) Garrett's court-appointed attorney realized in the course of discovery that Garrett "could not possibly" have been the person who sold drugs to Dunn and Donnelley. Ultimately, the District Attorney reached the same realization and dismissed all charges on April 4, 2006. (*Id.*, ¶¶ 13-14.) A clear, reasonable inference from the factual allegations of the Complaint is that Garrett's physical condition was materially and obviously different from that of the offender with whom defendants dealt in that undercover operation, inasmuch as Garrett is "disabled and confined to a wheelchair as a result of a stroke." (*Id.*, ¶ 15.)

On the basis of these allegations, Garrett's Complaint interposes six causes of action against defendants, to-wit: (1) a § 1983 claim alleging wrongful arrest and malicious prosecution "for crimes she did not and obviously could not have committed" (Count One); (2) a state-law claim for malicious prosecution (Count Two); (3) a state-law claim for outrage (Count Three); (4) a state-law claim for wantonness (Count Four); (5) a state-law claim for false imprisonment, pursuant to Alabama Code § 6-5-170 (Count Five); and (6) a state-law claim for civil conspiracy

---

[2]        A second drug buy was attempted on October 27, 2003, when Donnelley and Dunn ordered "weed" from a suspect later identified as Garrett, paying her in advance; however, the suspect never returned with marijuana or other drugs, such that the transaction was never consummated. (*Id.*, ¶ 11.)

(Count Six).

   **B.      The Report and Recommendation.**

   Defendants promptly moved to dismiss all of Garrett's claims on the bases of untimeliness (all causes of action), Eleventh Amendment immunity (as to plaintiff's claims against them in their official capacities), inadequate pleading (federal cause of action), qualified immunity (federal cause of action), and absolute immunity (state-law claims).

   After affording both sides a full opportunity to brief these issues, Magistrate Judge Milling entered a Report and Recommendation (doc. 26) concluding that the Motion to Dismiss should be granted.  In particular, the Magistrate Judge recommended that the § 1983 wrongful arrest claim (Count One) and the state-law false imprisonment claim (Count Five) be dismissed as untimely, that defendants be granted immunity as to any and all claims against them in their official capacities, that defendants be granted qualified immunity on plaintiff's § 1983 malicious prosecution claim (Count One) because plaintiff had failed to show that defendants acted without probable cause and with malice, that plaintiff's outrage (Count Three) and wantonness (Count Four) claims be dismissed as insufficiently pleaded under the *Twombly* standard, and that plaintiff's civil conspiracy claim (Count Six) be dismissed for want of any underlying wrong. Plaintiff has filed objections to several of these recommendations, and those objections (which generally relate to issues already covered in the parties' earlier briefing on the Rule 12(b) motion) have now been re-briefed by both sides.  After careful review of the Report and Recommendation, plaintiff's objections and supporting brief, defendants' brief responding to the objections, the underlying Rule 12(b) briefing, and all other parts of the court file deemed appropriate, the Court **adopts** the Report and Recommendation **in part**, and **overrules** it **in part**.[3]

_____

   [3]      In reviewing the Report and Recommendation, the Court recognizes its statutory obligation to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  That said, the Court also hews to the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."  *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

## II.    Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed.R.Civ.P.  While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  As a general proposition (and setting aside for the moment the special pleading requirements that attach to § 1983 claims subject to a qualified immunity defense), the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.  Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964).[4]

---

[4]    To the extent that plaintiff argues that the *Twombly* standard for sufficiency of a pleading is circumscribed to the Sherman Act context, binding authority unequivocally refutes such an assertion.  *See, e.g., James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (applying *Twombly* test to insurance action and recognizing that *Twombly* "retir[ed] the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard"); *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008) (applying *Twombly* to § 1983 prisoner action); *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1037 (11th Cir. 2008) (applying *Twombly* to § 1983 action alleging equal protection violations by municipality and municipal officials).  As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of *all* claims brought pursuant to Rule 8(a)."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008) (emphasis added).  The Court therefore rejects plaintiff's misguided contention that *Twombly*'s reach is confined to the Sherman Act claims and that the now-obsolete *Conley v. Gibson* "no set of facts" standard has continuing vitality in all other pleading contexts.

### III.    Analysis.

####     A.       Timeliness of § 1983 Wrongful Arrest Claim.

With respect to the Recommendation that Garrett's § 1983 wrongful arrest cause of action be dismissed as untimely, plaintiff does not dispute that any such claim she might assert is in fact time-barred.  Instead, she maintains that her § 1983 cause of action in Count One does not sound in wrongful arrest, but is instead framed solely in terms of malicious prosecution.[5] Plaintiff's interpretation of her § 1983 cause of action cannot be squared with the language of Count One itself, which plainly asserts § 1983 claims for both wrongful arrest and malicious prosecution.[6]  Be that as it may, plaintiff has now unambiguously disclaimed any intent to bring a § 1983 claim against defendants for wrongful arrest.  As such, the § 1983 wrongful arrest cause of action articulated within Count One is properly **dismissed** on grounds of abandonment.  Even if plaintiff had not abandoned her § 1983 wrongful arrest claim, dismissal of that cause of action would remain appropriate because it is time-barred for the reasons delineated on pages 4 through 7 of the Report and Recommendation.

####     B.       Qualified Immunity and § 1983 Malicious Prosecution Claim.

#####         1.       Qualified Immunity Standard.

Where a defendant moves to dismiss a complaint on qualified immunity grounds, courts "accept the allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiffs."  *Long v. Staton*, 508 F.3d 576, 579 (11th Cir. 2007); *see also Weissman v. National Ass'n of Securities Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007) (in reviewing Rule 12(b) motions alleging immunity, courts accept well-pleaded factual allegations as true and construe all inferences drawn therefrom in the light most favorable to plaintiff); *Skop v. City of*

---

[5]       Specifically, in response to the Magistrate Judge's finding that her § 1983 wrongful arrest claim is barred by the statute of limitations, plaintiff argues that "[t]he Magistrate Judge incorrectly understood the basis of Count One.  Garrett alleged a § 1983 malicious prosecution claim in Count One."  (Doc. 30, at 2 n.2.)

[6]       Indeed, Count One is labeled "§ 1983 Violations" (using the plural) and states, *inter alia*, as follows: "These Defendants violated 42 U.S.C. § 1983 by wrongfully arresting Garrett without probable cause ... and maliciously prosecuting her from [*sic*] crimes she did not and obviously could not have committed."  (Complaint, ¶ 19.)

*Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007) ("In making a qualified immunity determination, we are similarly obliged to review the facts in the light most favorable to the plaintiff."). "[A] party claiming immunity from suit bears the burden of proof." *Weissman*, 500 F.3d at 1296.[7]

When a government official is sued in his individual capacity for money damages for alleged civil rights violations, he may posit an affirmative defense of qualified immunity. *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed.2d 396 (1982); *see also Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.") (citation and brackets omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"To be entitled to qualified immunity, the defendant must prove that he was acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). If the defendant satisfies this burden, then "a plaintiff seeking to overcome the defendant's privilege of qualified immunity must show (1) that the officer violated her federal constitutional or statutory rights, and (2) that those rights

---

[7]     There is nothing premature or untoward about a defendant lodging a qualified immunity defense in its Rule 12 motion, rather than awaiting summary judgment. After all, the Supreme Court has directed lower courts that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) ("We have applied the qualified immunity defense at the 12(b)(6) stage before.").

were clearly established at the time the officer acted." *Douglas Asphalt Co. v. Qore, Inc.*, ---
F.3d ----, 2008 WL 4022351, *3 (11th Cir. Sept. 2, 2008); *see also Holloman ex rel. Holloman v.
Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (similar).

It is undisputed that defendants were acting within the scope of their discretionary
authority in connection with the undercover sting operation and the subsequent arrest and
prosecution of Garrett.[8] Therefore, the critical questions are whether the well-pleaded facts in
the Complaint, and all reasonable inferences drawn therefrom, establish that defendants violated
her federal constitutional rights, and whether those rights were clearly established at the time of
the alleged violation. The Court will consider these questions sequentially.

2. *Violation of a Constitutional Right.*

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth
Amendment and a viable constitutional tort cognizable under § 1983." *Skop*, 485 F.3d at 1144
(citation omitted); *see also Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) ("a Fourth
Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim")
(citation omitted). "To establish a federal malicious prosecution claim under § 1983, a plaintiff
must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation
of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of
Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). For purposes of defendants' Rule 12(b) motion,
the disputed elements of a malicious prosecution tort cognizable under § 1983 are whether
defendants instituted or continued a criminal prosecution against Garrett "with malice and
without probable cause." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003); *see also
Kingsland*, 382 F.3d at 1234-35 (§ 1983 malicious prosecution claim turned on "whether there
was an absence of probable cause for the original criminal proceeding, and whether there was
malice on the part of the defendants"). The Court now scrutinizes each of these contested

---

[8]     Indeed, plaintiff's briefs repeatedly disclaim any challenge to the "discretionary
authority" element of the qualified immunity defense. In her response to defendants' Rule 12(b)
motion, plaintiff stated, "Garrett does not argue that the Defendants were not acting within their
discretionary authority." (Doc. 23, at 18.) Similarly, in her brief accompanying her objections
to the Report and Recommendation, Garrett "agreed that the Defendants were acting within
discretionary authority." (Doc. 30, at 7 n.6.) In light of these concessions, the Court need not
examine the "discretionary authority" aspect of the qualified immunity defense further.

elements separately.

> a.      *Lack of Probable Cause.*

It is clear that "lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution." *Kjellsen*, 517 F.3d at 1237.  Accepting the well-pleaded factual allegations of the Complaint as true, and construing all reasonable inferences therefrom in plaintiff's favor, the Court is of the opinion that Garrett has adequately pleaded facts showing an absence of probable cause in defendants' arrest and prosecution of her. The Complaint alleges that defendants Dunn and Donnelley had witnessed the unidentified black female from whom they purchased crack cocaine and from whom they attempted to purchase marijuana in the October 2003 drug sting operation "go to a trailer, tap on it's [*sic*] side, enter and return with the drugs." (Complaint, ¶ 10.)  According to the Complaint, this transaction was videotaped.  The Complaint further alleges that Garrett could not possibly have been this unidentified black female because she is disabled and confined to a wheelchair as a result of having a stroke.  Although not specifically articulated in the Complaint, a manifestly logical, reasonable inference from these factual allegations is that the reason Garrett could not possibly have been the perpetrator of these drug sales to undercover officers is that the person with whom defendants dealt (*i.e.*, the person who went to a trailer, entered a trailer, and emerged with drugs) was neither disabled nor wheelchair bound.[9]  If defendants saw the suspect walk during the transaction, and videotaped her during same, and if Garrett is indeed a wheelchair-bound stroke victim, all of which is either alleged or may be reasonably inferred from the allegations of the Complaint, then defendants could not possibly have harbored a reasonable belief that the seller of narcotics in these transactions was Jeanette Garrett.  That showing in turn would establish a

---

[9]      In their latest brief, defendants disparage plaintiff's "(somewhat condescending) argument that disabled people are incapable as a matter of law of committing crimes." (Doc. 32, at 12-13.)  This contention utterly misses the point of plaintiff's theory, as reasonably derived from her pleading.  As this Court construes reasonable inferences drawn from the Complaint, plaintiff's position is <u>not</u> that disabled people are fundamentally incapable of distributing narcotics unlawfully.  Of course they can.  Rather, her point is that Garrett is incapable of being the specific person from whom defendants bought drugs in these particular videotaped transactions because Garrett (unlike the person with whom defendants dealt) is disabled and wheelchair bound.

lack of probable cause.  *See Skop*, 485 F.3d at 1137 ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."); *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) (same).

Both defendants' Motion to Dismiss and the Report and Recommendation indicate that the Complaint fails to show a lack of probable cause because Garrett did not plead as much factual detail as she could have.  Unquestionably, Garrett could have pleaded the underlying facts with greater particularity.  She could have recited the year in which she suffered a stroke and became wheelchair bound.  She could have explicitly stated that the offender in the sting operation, as personally observed by defendants and recorded on defendants' videotape, was fully ambulatory, was not in a wheelchair, and spoke in a normal voice.  She could have alleged (as she stated in her briefs) that her speech is barely intelligible, so defendants must have known from talking to the person who sold them drugs that Garrett was not she.  She could have made explicit the factual basis for her mistaken identity theory, rather than simply alluding to it with basic facts and reasonable inferences.  Plaintiff could have spared herself, opposing counsel, and this Court a great deal of effort on the Rule 12(b) motion had she pleaded these things.  But she was not legally required to do so.[10]  Indeed, the Eleventh Circuit has made clear that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low."  *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003); *see also Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997) ("A complaint need

---

[10]        That said, plaintiff's inexplicable failure to include these factual details (which she recites in her brief, despite knowing full well that a Rule 12(b)(6) motion must be assessed by reference to the four corners of the Complaint) in her pleading has rendered the probable cause determination less clear-cut than it would have been had she elaborated on her claim rather than forcing the Court to "connect the dots" via reasonable inferences.  This Court parts company with the Report and Recommendation's analysis of this claim principally with respect to the reasonableness of connecting the dots in this fashion, given the specific parameters of the Complaint.  Stated differently, this Court is of the opinion that the Report and Recommendation too strictly adheres to the literal text of plaintiff's pleading without sufficient allowance for reasonable inferences in plaintiff's favor.  Those inferences, if proven, would establish that defendants could not have had probable cause, after reasonable investigation, to arrest and prosecute Garrett for the October 2003 transactions.

not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.") (citation omitted); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) ("the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent").  The rules do not oblige a plaintiff to plead its claims with maximum specificity.  *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").  In the words of Justice Powell, "[l]iberal pleading rules have both their merit and their price."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 384, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (Powell, J., concurring).[11]

It is, of course, true that, even if probable cause is absent, qualified immunity protects an arresting officer as long as he had "arguable probable cause" for the arrest, that is, if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed."  *Skop*, 485 F.3d at 1137 (citation omitted); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").  But the well-pleaded facts of the Complaint, and reasonable inferences drawn therefrom, establish that no reasonable officer with defendants' knowledge upon reasonable investigation could have

---

[11]     That said, the Court is fully aware that "[h]eightened pleading is the law of this circuit when § 1983 claims are asserted against government officials in their individual capacities."  *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1275-76 (11th Cir. 2001) (citation omitted).  But "heightened pleading" does not mean that a Complaint must include every single factual allegation known to plaintiff that tends to inculpate defendants and bolster her theory of liability.  Rather, the § 1983 heightened pleading requirement contemplates only that, where the defendant is an individual who may have a qualified immunity defense, "some factual detail is necessary."  *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *see also Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (§ 1983 complaint must include more than vague and conclusory allegations).  Some factual detail has been provided in the Complaint.  More precisely, enough facts have been pleaded to identify the nature of the alleged constitutional violation, the underlying events upon which it is predicated, and the factual basis for plaintiff's contention that defendants violated her Fourth Amendment rights, so that the qualified immunity defense can be fairly tested at this stage of the proceedings.

believed that a wheelchair-bound stroke victim like Garrett was the person they watched, talked to and videotaped in the drug transactions in question; therefore, plaintiff's well-pleaded factual allegations and inferences flowing from same sufficiently establish the absence of arguable probable cause to preclude defendants from being shielded by qualified immunity.[12]

> b.     *Malice.*

For her § 1983 malicious prosecution claim to withstand defendants' qualified immunity defense at the Rule 12(b) stage, plaintiff must also allege facts showing malice on the part of defendants.  As the Report and Recommendation pointed out, "Malice, for purposes of a malicious prosecution action, may be inferred from want of probable cause ....  The element of malice may be inferred from the conduct of the defendant if no other reasonable explanation

---

[12]     Defendants seek to buttress their probable cause argument by asserting that "once a magistrate issues a warrant for [plaintiff's] arrest and a duly convened grand jury finds the existence of probable cause, there can be no question as to the existence of probable cause at the time of the arrest."  (Doc. 14, at 20.)  In so contending, defendants rely on the Complaint's allegation that an arrest warrant was issued for Garrett in March 2004 (five months after the sting operation) and that a grand jury indicted Garrett in April 2004 (six months after the sting operation) for the alleged drug transactions conducted and investigated by defendants.  But the mere existence of an arrest warrant and a post-arrest indictment do not necessarily immunize officers from liability for false arrest or malicious prosecution, nor do they guarantee the presence of actual or arguable probable cause.  *See generally Jones*, 174 F.3d at 1285 ("[T]he law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen ... if such false statements were necessary to the probable cause."); *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406, 1409 (11th Cir. 1989) ("A subsequent indictment does not retroactively provide probable cause for an arrest that has already taken place."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) ("after-the-fact grand jury involvement cannot serve to validate a prior arrest"); *Hawkins v. City of Greenville*, 101 F. Supp.2d 1356, 1362 (M.D. Ala. 2000) (under Alabama law, indictment is not a full defense to action for malicious prosecution, which can still be maintained if, for example, false evidence is used in seeking the indictment); *Horton v. Williams*, 2007 WL 1575974, *2 (M.D. Ala. May 30, 2007) ("When a law enforcement officer applies for an arrest warrant, he is not entitled to qualified immunity if a reasonably well-trained officer in his position would have known that there was no probable cause for the arrest and that he should not have applied for the warrant.").  Thus, without evidentiary development as to defendants' role in pursuing the warrant and indictment, the veracity of factual assertions they made, the reasonableness of their investigation, and the like, the Court cannot conclude that the warrant and indictment necessarily automatically trigger qualified immunity here.

exists for his actions." *Eubanks v. Hall*, 628 So.2d 773, 775 (Ala.Civ.App. 1993) (citation omitted). Indeed, the Alabama Supreme Court has elaborated that "malice is an inference of fact, not of law, ... and may be inferred from an absence of probable cause unless facts disclose that the defendant in the malicious prosecution action was acting in good faith." *Willis v. Parker*, 814 So.2d 857, 864 (Ala. 2001) (citation omitted). Malice may also be inferred from "mere wantonness or carelessness." *SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.*, 939 So.2d 885, 908 (Ala.Civ.App. 2005) (citation omitted). As discussed *supra*, the Complaint adequately alleges that defendants lacked probable cause to arrest Garrett. The facts as pleaded in the Complaint also tend to show that defendants were wanton or careless in their misidentification of Garrett (given her obvious physical disabilities that were not shared by the person who sold them the drugs). As such, the Court finds that the Complaint adequately alleges facts giving rise to an inference of malice sufficient to sustain a claim for malicious prosecution under § 1983, and cannot find as a matter of law that the allegations of the Complaint could not plausibly support an inference of fact that defendants' conduct was malicious.

        3.      *"Clearly Established" Nature of Right.*

        The Court having found that the Complaint adequately pleads a constitutional violation, the next step in the qualified immunity inquiry is whether Garrett's Fourth Amendment right to be free from malicious prosecution was clearly established at the time of the alleged violation.

        In determining whether a right is clearly established, the "relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Bashir*, 445 F.3d at 1330 (citation omitted). "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bashir*, 445 F.3d at 1330. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 1330-31 (citation omitted).

        This aspect of the qualified immunity inquiry is quite straightforward and cannot reasonably be disputed. Unquestionably, it was clearly established as of October 2003 that law

enforcement officers could not arrest a suspect without probable cause. *See Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006) (in qualified immunity analysis in false arrest context, court focused on whether plaintiff's constitutional rights were violated, because "[t]here is no question that the second step - clearly established - is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment"); *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (same). Given the Court's findings that the Complaint adequately pleads facts tending to show that defendants arrested Garrett without even arguable probable cause, such an arrest and ensuing prosecution would violate constitutional rights that were clearly established at the time of the violation, as a matter of law. *See Skop*, 485 F.3d at 1144-45 (where plaintiff's version of facts showed that defendant lacked arguable probable cause to arrest her, plaintiff's malicious prosecution claim adequately alleged a violation of clearly established law). At this stage, defendants are not entitled to qualified immunity based on the "clearly established" prong of the qualified immunity analysis, and their arguments to the contrary are meritless.[13]

> ### 4.    *Defendants are Not Entitled to Qualified Immunity at this Time.*

In sum, the Complaint establishes that Garrett's malicious prosecution claim is proceeding on a theory of mistaken identity. She claims that she is not the person from whom defendants purchased controlled substances, yet she was arrested and prosecuted for those offenses. "An arresting officer is required to conduct a reasonable investigation to establish

---

[13]    Defendants' "clearly established" argument is predicated on the notion that binding appellate decisions have not "held that law enforcement officer may be liable for the arrest of an individual he believes to have been implicated in an undercover sting operation." (Doc. 14, at 22.) Such a contention contemplates a degree of specificity and factual identity that *Bashir* and other appellate decisions have expressly disclaimed. It also ignores *Davis*, *Skop* and other authorities recited above, wherein the Eleventh Circuit has repeatedly and unequivocally determined that arresting a suspect without probable cause, as the Complaint alleges here in sufficient detail, violates clearly established constitutional law. Any reasonable officer would have known in 2004 that arresting a suspect for whom no probable cause exists after reasonable investigation is unlawful. Thus, the "clearly established" prong is a nonstarter for defendants in this context.

probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  Moreover, the law of this Circuit is quite clear that "[a]n officer mistakenly arresting a second party when the arrest of the first party would be valid may be protected by qualified immunity only if the mistake in arresting the second party is reasonable." *Tillman v. Coley*, 886 F.2d 317, 320 (11th Cir. 1989) (citation omitted).  The factual allegations and reasonable inferences drawn from the Complaint raise substantial questions as to whether (a) defendants conducted a reasonable investigation, which would have revealed marked, obvious physical dissimilarities between Garrett and the suspect they sought; and (b) defendants' misidentification of Garrett was reasonable based on information gleaned from that investigation.  That uncertainty precludes dismissal of Garrett's § 1983 malicious prosecution claim on qualified immunity grounds at this time.  *See id.* at 321 (no qualified immunity for sheriff where undercover officer purchased drugs from 24-year old dealer, then mistakenly arrested 41-year old suspect for that offense, inasmuch as "[a] reasonable police officer would have been sufficiently concerned by the age discrepancy of a generation to make further investigation" before arresting the 41-year old).  As such, the Motion to Dismiss is **denied** insofar as it is predicated on a qualified immunity defense to the § 1983 malicious prosecution cause of action.[14]

### C.    *The State-Law Claims.*

### 1.    *Adequacy of Pleading.*[15]

_____

[14]    Of course, this ruling does not preclude defendants from re-asserting their qualified immunity defense later in this case as the factual record becomes more developed.  *See Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.").

[15]    Defendants have repeatedly sought to tar the Complaint with the "shotgun pleading" brush.  This contention proceeds from a misunderstanding of the term.  A shotgun pleading is one which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief.  The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).  The ills of shotgun pleading have been thoroughly catalogued by the Eleventh Circuit in a host of opinions on the subject.  Perhaps chief among them is the inevitable propagation of unnecessarily broad discovery, with the case proceeding along aimlessly because the inclusion of numerous extraneous and immaterial allegations incorporated

In addition to her § 1983 claim, Garrett identifies a number of state-law causes of action in the Complaint, including claims for malicious prosecution, outrage, wantonness, false imprisonment, and civil conspiracy.  Plaintiff has conceded that "it appears the false imprisonment claim is time-barred" (doc. 23, at 11); therefore, the Motion to Dismiss is **granted** with respect to Count Five on limitations grounds.

As for the state-law malicious prosecution claim, Alabama courts have recognized the following elements for such a cause of action: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882; *see also Moon v. Pillion*, --- So.2d ----, 2008 WL 2699683, *2 (Ala. July 11, 2008) (reciting elements of Alabama malicious prosecution tort).  While defendants seek dismissal of this claim for lack of facts showing malice and lack of probable cause, the Court has already determined, *supra*, that the factual allegations of the Complaint and reasonable inferences drawn therefrom raise substantial questions as to both the malice and lack of probable cause elements.  *See Delchamps, Inc. v. Bryant*, 738 So.2d 824, 832 (Ala. 1999) ("When disputed facts are presented, the issue of the existence of probable cause and the absence of malice is not a question of law for

---

into every single claim for relief renders it virtually impossible to delineate reasonable discovery boundaries.  *See, e.g., Davis*, 516 F.3d at 981-82; *Byrne v. Nezhat*, 261 F.3d 1075,1129 (11th Cir. 2001); *Johnson Enterprises*, 162 F.3d at 1333.  Simply put, then, the problem with a shotgun pleading is that it prevents the parties and the court from understanding what the case is really about because the pleadings are cluttered with irrelevant and unrelated facts.  The consequence is that discovery becomes a fool's errand in which parties seek out evidence relating to claims whose factual parameters are so fuzzy, amorphous and ill-defined as to be utterly indeterminate. These circumstances simply are not present in this case.  Plaintiff has alleged six theories of liability all springing from the same discrete set of facts and circumstances.  The reader is not left guessing from the Complaint as to how plaintiff was wronged, what defendants are alleged to have done, how plaintiffs contend that defendants are liable for those acts and omissions, or how the factual allegations are possibly material to the particular causes of action asserted. Contrary to defendants' suggestion, a complaint does not become a shotgun pleading merely because multiple claims rely upon the same underlying factual allegation or because the Complaint is not pleaded with maximum particularity.  The Court is confident that defendants will be able to ferret out additional detail concerning plaintiff's legal theories in a timely and efficient manner via the discovery process.  The "shotgun pleading" line of authorities is unavailing here.

the trial court."). These determinations apply with equal force to the state-law iteration of

Garrett's malicious prosecution cause of action. Count Two states a claim upon which relief can

be granted.[16]

As for Count Three, Alabama courts have outlined the contours of the tort of outrage in

the following terms:

> "[W]e now recognize that one who by extreme and outrageous conduct
> intentionally or recklessly causes severe emotional distress to another is subject to
> liability for such emotional distress and for bodily harm resulting from the
> distress. The emotional distress thereunder must be so severe that no reasonable
> person could be expected to endure it.  Any recovery must be reasonable and
> justified under the circumstances, liability ensuing only when the conduct is
> extreme.... By extreme we refer to conduct so outrageous in character and so
> extreme in degree as to go beyond all possible bounds of decency, and to be
> regarded as atrocious and utterly intolerable in a civilized society."

*Baker v. State Farm General Ins. Co.*, 585 So.2d 804, 807 (Ala. 1991) (citation omitted).

While Alabama courts do recognize this tort, they have consistently deemed it a "very

limited cause of action that is available only in the most egregious circumstances."  *Thomas v.

BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993) (noting that the Alabama

Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question

was presented").[17]  A plaintiff cannot prevail on an outrage claim unless she establishes that the

---

[16]     In opposition to plaintiff's objections to the Report and Recommendation,
defendants argue that Count Two is so vague that it fails to comport with basic pleading
standards under Rule 8 of the Federal Rules of Civil Procedure.  The Court disagrees.  A fair
reading of Count Two (taken in the context of the surrounding factual allegations of the
Complaint) is that Garrett maintains that defendants (1) maliciously and without probable cause
caused her to be arrested and prosecuted, (2) that all charges against Garrett were ultimately
*nolle prossed*, and (3) that plaintiff sustained injuries in the form of loss of liberty, mental
anguish, emotional distress, humiliation, and loss of Social Security benefits.  Specific facts are
pleaded in support of these allegations.  As such, it is readily apparent that Garrett has pleaded
"enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S.Ct. at 1974.
Even as amplified by *Twombly*, Rule 8 requires nothing more of a plaintiff.

[17]     So circumscribed, in fact, is the reach of the tort of outrage that the Alabama
Supreme Court has allowed such claims only in three limited circumstances: "cases having to do
with wrongful conduct in the context of family burials; cases where insurance agents employed
heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual
harassment."  *Carter v. Harris*, 64 F. Supp.2d 1182, 1194 (M.D. Ala. 1999) (citing *Thomas*, 624

defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So.2d 317, 322 (Ala. 2003) (citation omitted).  Without factual development via the discovery process, the Court is unable to conclude as a matter of law that the circumstances alleged by Garrett categorically cannot support a cause of action for outrage under Alabama law.[18]  To the contrary, there is authority for the proposition that breaches of public trust generally akin to those alleged may sustain an outrage claim.  *See generally Woodley v. City of Jemison*, 770 So.2d 1093, 1096 (Ala.Civ.App. 1999) (where plaintiffs presented evidence that police officer made obscene telephone calls to plaintiffs using information gleaned from his police duties, it was for jury to determine whether officer's breach of public trust was so outrageous that it goes beyond the bounds of decency); *Tinker v. Beasley*, 429 F.3d 1324, 1330 (11th Cir. 2005) (pointing out that Alabama outrage claim has been deemed sustainable where pretrial detainee, charged with capital murder and later exonerated, was temporarily held on death row for purposes of coercing a confession).

   With respect to Count Four, the Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Pritchett v. ICN Medical Alliance, Inc.*, 938 So.2d 933, 939 (Ala. 2006); *see also Kerns v. Sealy*, 496 F. Supp.2d 1306, 1318 (S.D. Ala. 2007) (similar).  On its face, the Complaint alleges enough facts to state a claim for wantonness that is at least plausible.  If, as

---

So.2d at 1044); *see also Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000).  Notwithstanding the narrowly cabined application of this tort, Alabama courts have never held that, as a matter of law, outrage cannot and does not apply to any circumstances other than burials, insurance coercion, and sexual harassment.

   [18]      In so concluding, the Court observes that defendants' Motion to Dismiss and supporting briefs did not argue (much less present authority demonstrating) that plaintiff's factual allegations are legally inadequate to demonstrate outrage.  Instead, defendants' sole asserted basis for seeking dismissal of the outrage cause of action was their contention that sovereign immunity barred the claim.  Under the circumstances, the Court finds it inappropriate to grant Rule 12(b) relief on Count Three based on a legal argument that movants never asserted and that has not been explored in briefing.

plaintiff has pleaded, defendants caused the arrest, indictment and prosecution of Garrett without having performed reasonable investigation which would have readily established that her physical characteristics were drastically different from those of the suspect from whom defendants purchased controlled substances in October 2003, those circumstances could support a finding of liability on the wantonness count.  Defendants have not asserted otherwise.

As for the civil conspiracy claim set forth at Count Six, both the Report and Recommendation and defendants' opposition to plaintiff's objections focus on the requirement that a civil conspiracy is not actionable under Alabama law absent an underlying wrong.  This is a correct statement of law.  *See McLemore v. Ford Motor Co.*, 628 So.2d 548, 550 (Ala. 1993) ("Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action.  The gist of the action is not the conspiracy alleged but the wrong committed.") (citation omitted); *Southern v. Pfizer, Inc.*, 471 F. Supp.2d 1207, 1220 (N.D. Ala. 2006) (applying *McLemore* and explaining that claim for civil conspiracy to make fraudulent misrepresentations can be maintained only if plaintiff presents a viable misrepresentation claim).  But the Court has already concluded that the Complaint adequately pleads causes of action for the underlying wrong of malicious prosecution; therefore, Count Six is not infirm for failure to allege sufficiently an underlying wrong, and dismissal is not warranted on that basis.

2.      *Sovereign Immunity.*

Although the Report and Recommendation relied on a *Twombly* plausibility analysis in recommending dismissal of all state-law causes of action asserted by Garrett, defendants' Motion to Dismiss actually proceeded on a different footing.  Rather than arguing that the Complaint's allegations were insufficient to show wrongdoing, defendants sought dismissal of Counts Two through Six predominantly on the basis of the Alabama doctrine of sovereign immunity.  The Report and Recommendation did not address this defense.

Pursuant to Article I, Section 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity."  *Id.*  "The wall of immunity erected by § 14 is nearly impregnable."  *Ex parte Davis*, 930 So.2d 497, 500 (Ala. 2005) (citation omitted).  In accordance with Section 14's sovereign immunity, courts applying Alabama law have routinely held that sheriffs (and, by association, deputy sheriffs) are executive officers of the State who, with few exceptions, are absolutely immune from suit on state-law

claims.  *See Sheth v. Webster*, 145 F.3d 1231, 1236-39 (11th Cir. 1998) (recognizing that "absolute sovereign immunity" is afforded to sheriffs and deputy sheriffs under Alabama law). This outcome applies with equal force to state-law claims leveled against a sheriff or deputy sheriff in his individual capacity.  Indeed, "[u]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity."  *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997).[19]

      The fundamental problem with this defense here, at least at the pleadings stage, is that the Complaint nowhere alleges that defendants are sheriffs or deputy sheriffs.  As such, it is indeterminate whether Article I, Section 14 immunity even applies.  To be sure, the Complaint does allege that defendants participated "in an undercover drug law enforcement operation conducted by the Baldwin County Sheriff's Department."  (Complaint, ¶ 8.)  It identifies defendants Dunn and Donnelley as "undercover officers."  (*Id.*, ¶¶ 9-10, 13.)  But it never states that any of these defendants are deputy sheriffs to whom Section 14 immunity would apply.

      In response to this inconvenient truth, defendants disparage plaintiff's suggestion that their particular law enforcement status matters for Section 14 immunity purposes, trivializing the issue as a "tempest in a teapot over whether the Defendants are actually Deputy Sheriffs."  (Doc. 32, at 17.)[20]  Here's why it matters: Alabama courts have repeatedly recognized that the ambit of

---

[19]    *See also McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) ("a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if such claim is based on malicious or intentional wrongdoing); *Cobb v. Marshall*, 481 F. Supp.2d 1248, 1261 (M.D. Ala. 2007) (holding that, where an Alabama sheriff is sued for money damages in his individual capacity for state-law claims, that defendant is shielded from liability by § 14 immunity); *Cobb v. Hawsey*, 2007 WL 2093474, *3 (S.D. Ala. July 20, 2007) (collecting authorities and concluding that "courts applying Alabama law have routinely held that sheriffs (and, by association, deputy sheriffs) are executive officers of the State who ... are absolutely immune from suit on state-law claims"); *Anderson v. Greene*, 2005 WL 1971116, *9 (S.D. Ala. Aug. 16, 2005) (observing that binding authorities interpret Alabama law as declaring that "sheriffs and their deputies are absolutely immune from state law claims in their individual and official capacities, even if they are sued for actions that are malicious, intentional or otherwise outside the scope of their authority").

[20]    Interestingly, defendants neither allege nor present evidence tending to show that all three named defendants are Baldwin County Deputy Sheriffs.  Their silence on this point suggests that all of them are not, in fact, deputy sheriffs.  In their Motion to Dismiss, defendants

Section 14 immunity is broad enough to encompass deputy sheriffs. *See, e.g., Ex parte Sumter County*, 953 So.2d 1235, 1239 (Ala. 2006) ("claims against sheriffs and deputy sheriffs are barred by the absolute immunity of Article I, § 14 ... when the sheriffs or the deputies were acting within the line and scope of their employment") (citations omitted); *Ex parte Blankenship*, 893 So.2d 303, 305 (Ala. 2004) (where deputy sheriff is acting within line and scope of employment, Section 14 "bars an action against the deputy sheriff for damages").  Alabama courts' reasoning for extending Section 14 immunity to deputy sheriffs is that "the acts of the deputy sheriff are the acts of the sheriff," such that "it is logical that those acts should enjoy the same immunity covering the sheriff's own acts."  *Davis*, 930 So.2d at 501 (citations omitted).

If defendants were not Baldwin County Sheriff's Deputies, but were merely municipal or other law enforcement officers serving on a task force run by the Baldwin County Sheriff's Department, then these circumstances would appear distinguishable from the *Sumter County / Blankenship* lines of authority.  There may be compelling reasons why the acts of a task force agent who is not even employed by the sheriff should not be deemed the acts of the sheriff for Section 14 immunity purposes.  Yet defendants would simply gloss over this potentially critical distinction by stating in conclusory terms that "[a]s State actors, they are entitled to absolute immunity from all claimed violations of State law" under Section 14.  (Doc. 32, at 18.) Defendants provide the Court with no legal or factual basis for concluding that they were state officers at the time of the sting operation or subsequent arrest and prosecution of Garrett.  How were defendants state officers for Section 14 immunity purposes if they were not sheriffs or sheriff's deputies?  Defendants do not say.  Certainly, Alabama law does not generally extend sovereign immunity to municipal police officers.  *See Sheth*, 145 F.3d at 1236 (where defendants were City of Mobile police officers, "[n]ot applicable here is the absolute sovereign immunity ...

---

characterize defendant Dunn as "Baldwin County Deputy Sheriff" and defendants Stanton and Donnelley as "Baldwin County Drug Force Task Agents."  (Doc. 13, at 1.)  No evidence is presented in support of defense counsel's bare representations in this regard, and the Court cannot simply take counsel's word for it that Dunn is a Baldwin County Deputy Sheriff when the Complaint does not so allege.  Although the Court in no way relies on external sources of information in ruling on this Motion to Dismiss, and in no way vouches for or accepts the veracity of same, it does bear noting in passing that news reports concerning this matter stated that at least two defendants were municipal police officers, not deputy sheriffs.

afforded to certain state constitutional officers, including sheriffs and deputy sheriffs"); *Hardy v. Town of Hayneville*, 50 F. Supp.2d 1176, 1194 (M.D. Ala. 1999) (recognizing that Eleventh Circuit has refused "to extend sovereign immunity under the state constitution to municipal police officers").  In support of the remarkable proposition that Section 14 applies to agents on a Baldwin County Drug Task Force regardless of whether they were deputy sheriffs and even if they were municipal police officers, defendants merely cite *Lancaster v. Monroe County* for the proposition that Section 14 "grants immunity to state officers and employees in their official and individual capacities."  116 F.3d at 1430-31.  But this just begs the question of whether a drug task force agent is a "state officer or employee" regardless of who his employer is.  Perhaps there is Alabama authority that supports defendants' position.  Perhaps there are viable arguments that Section 14 immunity extends beyond sheriffs and their deputies to other law enforcement officers.  Perhaps there are facts showing that defendants are all sheriff's deputies.  But this Court cannot and will not perform defendants' research for them, make defendants' arguments for them, assume facts not in the record and not alleged in the Complaint, or otherwise unilaterally extend Alabama's doctrine of sovereign immunity well beyond the contours of the case law furnished in the parties' briefing, based solely on defendants' unadorned, conclusory say-so.

**IV.     Conclusion.**

For all of the foregoing reasons, plaintiff's objections to the Report and Recommendation are **sustained in part**, and **overruled in part**.  The Report and Recommendation is **adopted** as the opinion of this Court insofar as it recommends (a) the dismissal of the § 1983 wrongful arrest claim (Count One) and the state-law false imprisonment claim (Count Five) on limitations grounds, and (b) the dismissal of any and all claims against defendants in their official capacities on immunity grounds.  The Motion to Dismiss (doc. 13) is **granted** as to those specific claims, and those claims are **dismissed**.  As to the § 1983 malicious prosecution claim (also found in Count One) and the state-law claims of malicious prosecution (Count Two), outrage (Count Three), wantonness (Count Four) and civil conspiracy (Count Six), the Report and Recommendation is **overruled** and the Motion to Dismiss (doc. 13) is **denied** for the reasons

stated herein.[21]

As for plaintiff's pleading styled Motion for Leave to Amend Complaint if Magistrate's Recommendation is Sustained (doc. 31), that Motion is **moot** given that the condition on which the Motion was predicated has not come to pass.[22]

Defendants are hereby **ordered** to file an answer on or before **November 6, 2008.**

**DONE** and **ORDERED** this 22nd day of October, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[21]     In so concluding, however, the Court expressly **adopts** the Report and Recommendation's findings that these causes of action (Counts Two, Three, Four, and Six, and the malicious prosecution component of Count One), as pleaded, are not time-barred.

[22]     In any event, plaintiff is entitled to amend her pleading as a matter of course pursuant to Rule 15(a)(1), Fed.R.Civ.P., until such time as defendants file a responsive pleading, which has not yet occurred.  *See Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007) (explaining that for purposes of Rule 15(a), "a motion to dismiss is not a responsive pleading"); *Fortner v. Thomas*, 983 F.2d 1024, 1032 (11th Cir. 1993) ("It is well established in this circuit that a motion to dismiss is not considered a responsive pleading for purposes of rule 15(a).").  Therefore, leave of court is not needed and plaintiff remains free to amend her Complaint as of right until such time as defendants file an answer.