IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEANETTE GARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0175-WS-M |
| | ) | |
| CEONIA STANTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Defendants' Motion to Alter, Amend, or Vacate Order (doc. 35). On October 22, 2008, the undersigned entered a 22-page Order (doc. 34) granting defendants' motion to dismiss in part, and denying said motion in part. Defendants now seek reconsideration of that ruling pursuant to Rule 59(e), Fed.R.Civ.P.

Conspicuously absent from defendants' 18-page filing is any discussion of the applicable legal standard for reconsideration of a court decision under the Federal Rules of Civil Procedure, much less any explanation as to why defendants believe that standard is satisfied here. Nonetheless, the law is clear that defendants' Rule 59(e) Motion faces daunting threshold considerations. Indeed, "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").[1] It is manifestly improper for a litigant to utilize Rule 59(e)

---

[1]     The pragmatic policy considerations underlying these principles are that "if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, [a district] court could not efficiently or satisfactorily perform its duties." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985). Imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request.

as a platform "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted).[2]  The Eleventh Circuit has also stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced new arguments); *Coppage v. U.S. Postal Service*, 129 F. Supp.2d 1378, 1379-81 (M.D. Ga. 2001) (similar).  Furthermore, the Eleventh Circuit has reaffirmed that "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.  A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted).

Defendants' Rule 59(e) Motion proceeds in derogation of these principles.  Indeed, defendants' first stated ground for relief is that the October 22 Order failed to address their defense that plaintiff's state-law claims for outrage, wantonness and civil conspiracy are barred by the applicable two-year limitations period.  (Motion (doc. 35), at 1-3.)[3]  In briefing plaintiff's

---

[2]       *See also Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (noting that litigant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"); *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order."); *Gougler*, 370 F. Supp.2d at 1189 n.1 ("motions to reconsider are not a platform to relitigate arguments previously considered and rejected").

[3]       Remarkably, defendants fault the Report and Recommendation for similarly failing to rule on defendants' limitations defense with respect to these claims.  (Doc. 35, at 1-2.) This criticism is striking for two reasons.  First, in briefing plaintiff's objections to the Report and Recommendation, defendants stated that the Magistrate Judge had "found that ... her State law claims for outrage, wantonness and civil conspiracy were in fact timely."  (Doc. 32, at 2.) Thus, defendants now contradict themselves as to what the Report and Recommendation says on this point.  Second, they mischaracterize the Report and Recommendation, which unquestionably

objections to the Report and Recommendation, defendants urged this Court to dismiss plaintiff's state-law claims for outrage, wantonness and civil conspiracy for the following reasons: (a) plaintiff's pleading fails to satisfy the *Twombly* pleading standard and is a shotgun pleading (doc. 32, at 4-8, 16-17); and (b) even if plaintiff had adequately pleaded those state-law claims, they should be dismissed pursuant to the doctrine of absolute immunity (*id.* at 17-18). Nowhere in defendants' 20-page Response to Plaintiff's Objection (doc. 32) did they ask this Court to dismiss these state-law claims as time-barred. Instead, they relied solely on a *Twombly* argument and an absolute immunity defense, both of which this Court considered and rejected. Having failed to petition this Court to dismiss plaintiff's state-law claims as untimely, defendants cannot come back after the fact and attack the October 22 Order for failing to address an argument they did not properly present to this Court in the first place.[4] This assignment of error constitutes an improper use of the Rule 59(e) vehicle.

Next, defendants devote considerable space to repeating arguments previously considered and rejected by this Court concerning whether plaintiff's § 1983 cause of action states a claim on which relief can be granted, and the analytically overlapping question of whether qualified immunity applies. They belittle the October 22 Order's reasoning as being "[o]f course ... a non sequitur." (Doc. 35, at 3.) They reproduce block quotations from the Report and Recommendation, which the Court assures defendants was reviewed and studied in great detail before entry of the October 22 Order. They engage in rank speculation and hypotheticals as to

---

did include a specific finding that those very claims were timely. (Doc. 26, at 6-7.)

[4]    To be sure, defendants' initial Memorandum Brief in support of their Motion to Dismiss argued that "all of the Plaintiff's claims are barred as untimely." (Doc. 14, at 9.) In his Report and Recommendation, however, Magistrate Judge Milling expressly found "that the State law claims of outrage, wantonness, and civil conspiracy were raised in a timely fashion in this action and are not barred by the statute of limitations period." (Doc. 26, at 7.) Defendants did not raise timely objections to this finding; therefore, the October 22 Order cannot be manifestly erroneous for failing, *sua sponte*, to revisit that aspect of the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) ("Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct.") (citation omitted).

what defendants "would have done" in positively identifying Garrett as the violator, and urge the Court to make logical leaps that (a) they must have studied photographs to identify Garrett, and (b) such photographs must not have revealed anything about Garrett's disability. (Doc. 35, at 3.) In fact, defendants go so far as to insist that, at the time they made the identification that culminated in her arrest and prosecution, "Defendants would have had no way to know that she was disabled and confined to a wheelchair" and not the person from whom they bought drugs. (*Id.*) They suggest that defendants might have construed Garrett's wheelchair status at the time of her arrest was a mere "ruse" to avoid capture and prosecution. (*Id.* at 5.) They engage in idle conjecture as to why it took so long for the criminal charges against Garrett to be dismissed, and infer that Garrett's disability status (in contrast to the perpetrator of those drug offenses) could not have been the basis for such dismissal. (*Id.*)[5] In short, defendants urge the Court to turn the Rule 12(b) standard on its head by proposing that the Court construe all possible inferences (reasonable and unreasonable) from the well-pleaded facts in the Complaint in their favor for purposes of their Rule 12(b) motion. Where there are no existing facts to support defendants' position, they would apparently have this Court simply fill in the blanks in a manner that favors them, all for the purpose of affording them a premature exit from this litigation.

To the extent that defendants' theory for relief from the denial of their Motion to Dismiss rehashes arguments previously considered and rejected by this Court in the October 22 Order, it is improper. To the extent that defendants are articulating a brand-new argument asking the Court to rewrite the legal standards governing Rule 12(b) motions and speculate as to the facts in

---

[5]     Remarkably, defendants ask the Court to infer that "[i]t would not have taken a reasonable appointed attorney two years of discovery to learn that the Plaintiff's disability exculpated her from the crime. Nor would any reasonable District Attorney have prosecuted such a claim ...." (Doc. 35, at 10.) Apparently, then, defendants would have the Court dismiss the malicious prosecution claims in the Complaint for failure to state a claim based on a string of possibilities that (a) any reasonable attorney could have figured out the obvious mistaken identity in Garrett's prosecution before two years passed; (b) Garrett's criminal attorney and the prosecuting attorney must be reasonable; and (c) therefore, some defect other than obvious mistaken identity with the prosecution must have triggered the dismissal of the criminal charges against Garrett. Defendants' reasoning disregards the Rule 12(b) standard and would instead have the Court conjure facts from thin air to favor defendants' position, thereby bending over backwards to grant their motion to dismiss.

the Complaint in the light most favorable to defendants, it is likewise improper.  Rule 59(e) relief is not warranted on this basis.

One other point from this line of argument warrants direct mention at this time. Defendants incorrectly assert that the linchpin of plaintiff's malicious prosecution claims is that defendants had actual knowledge of her disability at the time of her arrest, and that plaintiff's failure to plead such knowledge necessarily dooms her Complaint.  (Doc. 35, at 6-7, 9-10.)[6] Such an argument simply ignores the October 22 Order, especially pages 13 and 14 thereof and the Eleventh Circuit authorities cited therein.  Under binding precedent, plaintiff does not have to prove that defendants had actual knowledge of her disability at the time of her arrest in order to sustain viable § 1983 claims against them; to the contrary, if they failed to conduct reasonable investigation to establish probable cause, or if their mistake in causing the arrest of Garrett rather than the actual suspect who had sold them drugs was not reasonable, then plaintiff may have a valid claim against them for a constitutional deprivation.  *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *Tillman v. Coley*, 886 F.2d 317, 320 (11th Cir. 1989).  Neither the "failure to investigate" nor the "unreasonable mistake" avenues are foreclosed to plaintiff at this time. Both theories may be reasonably inferred from the well-pleaded facts in the Complaint.  As such, the Court will not presume to force plaintiff into a particular theory for her § 1983 claim or to penalize her via summary dismissal of her malicious prosecution claims for failing to include "magic words" in her Complaint that are aligned with the particular theory defendants have pre-selected for her.  For these reasons, plaintiff's failure to plead actual knowledge of her disability by defendants at the time of her arrest is not a fatal defect in her Complaint, and defendants' insistence that the Complaint has been inadequately pleaded on that basis is not a persuasive ground for granting Rule 59(e) relief.

As for defendants' argument that the Complaint is inadequately pleaded for not indicating that there was any deficiency with the arrest warrant issued for plaintiff's arrest (doc. 35, at 13), and that any error by defendants in the arresting documents must have been the product of negligence or honest mistake (*id.*), this is simply a rehash of arguments previously

---

[6]      In this regard, defendants go so far as to allege that their knowledge of Garrett's disability "is the single fact upon which the entire claim depends."  (Doc. 35, at 9.)

considered and rejected, and does not warrant Rule 59(e) relief.  Besides, the Complaint clearly alleges that defendants incorrectly named Garrett, a person who could not possibly be the person they were looking for, as the suspect from whom they had purchased drugs in October 2003.  It may be reasonably inferred from the pleadings that defendants' inaccurate identification of Garrett led directly to her arrest, indictment and prosecution.[7]  At the Rule 12(b) stage, the Court cannot assume (as defendants would have it do) that this error was a mere mistake or negligence. What if defendants knew Garrett was not their suspect, but named her anyway?  What if they failed to perform a reasonable investigation before identifying her as the drug dealer? Reasonable inferences from the well-pleaded factual allegations of the Complaint admit to both of these possibilities, given that Garrett was a wheelchair-bound stroke victim while the person from whom defendants bought drugs was apparently fully ambulatory.  Indeed, if Garrett is a disabled stroke victim and if the offender was not, then it could be persuasively argued that such an egregious misidentification could not be the product of a mere mistake, and the defendants either knew or should have known upon reasonable inquiry required of them by law that Garrett was not the felon they sought.  Either of these scenarios could establish the requisite knowledge or recklessness to overcome the mere issuance of an arrest warrant.

Once again, the fundamental problem with defendants' arguments is that they would have the Court read the Complaint as restrictively as possible for purposes of determining whether plaintiff has satisfied her pleading burden, effectively confining her to the literal wording of that pleading.  At the same time, defendants would have the Court expand the Complaint to the outer limits of imagination and possibility for purposes of exculpating defendants from liability

---

[7]     Defendants protest that the Complaint fails to link them directly to the arrest warrant or indictment.  (*Id.* at 13-14.)  Evidently, then, defendants would have this Court indulge in speculation that it was sheer coincidence that they identified Garrett as the person from whom they purchased narcotics in October 2003 and that Garrett was later arrested and indicted for those offenses.  Obviously, a reasonable inference from the well-pleaded facts of the Complaint is that defendants' faulty identification of Garrett was not unrelated to her subsequent arrest and prosecution for those same offenses.  Obviously, a reasonable inference from these well-pleaded facts of the Complaint is that defendants' faulty identification of Garrett is the whole reason she was arrested and prosecuted for crimes she did not commit and could not have committed. Defendants' argument otherwise simply ignores the Rule 12(b) standard by which their Motion to Dismiss was assessed.

thereunder at the pleadings stage.  The law is otherwise.  Unquestionably, plaintiff is entitled to the benefit of reasonable inferences in her favor at this stage of the proceedings.  *See, e.g., Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2007); *Weissman v. National Ass'n of Securities Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007).  Those reasonable inferences enable the Complaint to pass muster as stating a claim of malicious prosecution in violation of plaintiff's clearly established constitutional rights.  That defendants wish the legal standard were otherwise is not a basis for discarding it altogether on Rule 59(e) review.  Similarly, that plaintiff could have pleaded her Complaint with more specificity than she did is not, in and of itself, a justification for Rule 59(e) relief, particularly when the October 22 Order explained in detail why the Court deemed the Complaint sufficient to satisfy pleading requirements imposed in qualified immunity cases.

For all of the foregoing reasons, Defendants' Motion to Alter, Amend or Vacate this Court's October 22, 2008 Order (doc. 35) is **denied**.

DONE and ORDERED this 7th day of November, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE